513-0313, John Holman, this is the Workers' Compensation Commission. Thank you, Your Honor. May it please the Court? You do have a full panel. We hear the arguments. Oh, okay. Well, I was going to talk specifically with Justice Hudson about one of his cases anyway, but we'll be back. He will return. Okay, very good. As he is now. Very good. My name is David Rom, and I do represent John Holman in this matter. As you've probably seen in this file, it's a very large case. Two million dollars in medical. You have a history of a bacteria that ravaged a man's body, causing limbs to be amputated, and eventually leading to his death. We have a full denial by an insurance company who's only paid $10,000 in benefits. The good news is, in spite of the large size of this file, we're really limiting it down to one question when you really think about it. And the question is whether a traveling employee who's exposed to a deadly bacteria during the course of his travels, his work travels, whether that's covered under the Workers' Compensation Act. Now, in this case, what we're asking for is a de novo review. I don't want to derail you, but does it make any difference if he didn't give notice? Well, in this situation, notice would have been impossible. He was for three months in a coma. Well, my question was, does it make any difference if he didn't give notice under the act? And didn't they specifically find that he didn't? As far as giving notice, they never really, as far as providing notice, the supervisor had testified that he actually went to the hospital and was aware of this. As far as notice about whether this was or was not bacteria related to a work accident or work incident, that notice would be something that I would say would not be relevant. Well, the reason why I say that is it appears as if the commission found that the claimant did not establish that he gave notice to the respondent as required under the act. And you didn't respond to that in your briefs at all. And the issue is forfeited. Well, the argument that we were making, though, is the notice would have to have been provided as it relates to workplace exposure. Notice as it relates to a traveling employee is separate. Because notice for a traveling employee then becomes a separate issue. It would have been a great argument had you made it in your brief. And if the commission finds that you gave no notice and you don't address the notice issue in your brief, my question is, is not the issue forfeited? And if it's forfeited, we never get to the causal connection finding. He's gone on failure to give notice. So, I mean, my question is, what are we to do with this? I would ask for the leave of the court to address that. But I apologize that I did miss that then. My apologies. I mean, they did find no notice, did they not? They did, but they found no notice while also saying the supervisor was aware of this. The reason why I guess no notice could have, you couldn't have provided notice was because he was in a coma. Well, let's assume all of that is true. But Justice Hoffman's point is, you knew the commission found, as part of their findings specifically, no notice was provided. You have an excuse for that, legitimately, which you should have argued in your briefs, but you never touched on it in your opening brief or your reply brief. So the question again, pointedly, is why is that not forfeited? Give us a reason to find it's not forfeited. Your Honor, once again, I would ask for leave. My apologies. I simply missed that as being the primary issue here today because the notice discussion had always focused on the fact that the supervisor Well, that is the primary issue, and what you're saying is it was a passable circumstance to provide notice, but you're still acknowledging you never argued. I am acknowledging, but I did not argue, and I do apologize. And I would ask for leave of the court. I don't know that you're going to get leave of the court to rebrief the thing, but I think you should make the argument as to why we should not apply the forfeiture provision. I mean, it's binding on you. It's not binding on us. We can ignore it if there's a good reason to ignore it. In this situation, it is completely on me. I do apologize. It is completely my mistake. I do apologize. As far as the forfeiture, I would ask that it not apply here just for the sake of equity on Mr. Coleman because I do believe this case should be remanded for further consideration. And, I mean, do you want me to continue on with my brief here? Yeah, you should. Okay. The other issues. Okay. Now, who's Holliman? Holliman. He's the employer? The supervisor, yes. Now he's working for somebody else, correct? Correct. Okay. Getting to the merits, assuming we don't apply forfeiture, didn't the commission find Holliman credible and question the claimant's testimony? Is that not what happened here? Yes. As it relates to the issue of whether the exposure occurred in a workplace environment because as far as their discussions about whether John had specifically had the spill at work, that's where they talked about the supervisor. My apologies. My mouth is dry. Is there any water out there somewhere? But as it relates to the traveling employee situation, that's the discussion that I wanted to talk about today. Because in our world, what my argument is, is because of the fact that he was in a traveling situation and a traveling employee, the focus by the court was on the standard look at whether he had a specific workplace exposure and they were focusing more on whether the spill on that day that John had testified to was credible or not credible. And what we're saying is as a traveling employee, we don't have to go to that extent. As a traveling employee, he can take a look at it differently because as a Supreme Court and even this appellate court, and in fact, Justice Hudson, it's your case that I'm citing to in a lot of my brief. Well, thank you for doing that. The main determination for a traveling employee, it's rules different than those that are governing a traditional accident. Wait a minute. I'm getting confused. Traveling employee means that you don't have to provide any evidence of a specific accident? It means that in this situation, the accident itself doesn't have to happen during a workplace environment. It can be expanded out to include the other risks associated with a traveling employee because as the courts have said, they take a look at reasonable, what might be reasonable and normally anticipated or foreseen by the employer. So what you're saying is that medically speaking, he had to get this infection during the time he was at DuQuoin. That's what the doctors said. This progresses over a two-day period, if I remember right. He had to be in DuQuoin, and that was during the time he was working in DuQuoin. And, you know, whatever he was doing there was reasonable and foreseeable. You know, whenever he got the infection, whether it was the water on the barrel or at some other point, it was while he was there on the job. That's what you're saying, right? That's what I'm saying, Justice. And what's the oppositional risk? Assuming he didn't get it at his workplace, don't you have to at least supply us with evidence as to where he got it so a decision can be made as to whether that was in the course of his employment? As for a traveling employee, my answer is… He doesn't recover 24 hours a day. But in this situation, as the courts have said repeatedly, as long as it is one of the risks associated with being a traveling employee, and in this situation being a traveling employee means he could go to work, he could go to a hotel, he could go to a restaurant as he testified. All of his activities were reasonable and foreseeable. So as far as being able to point specifically when or where he got it, then I would say, no, I don't think that's required. But in MRSA cases and things like that, many times they can't specifically say, I obtained the MRSA on this particular day, this particular time. We just know that it happened during the course of their exposure. Similarly with the traveling employee, instead of just limiting it to the hours at work, limiting it to the time period when he was there from 7 in the morning to 5 at night, and requiring that we have to prove it during one of those time periods, as a traveling employee, the workplace is essentially expanded out to include hotel, restaurant, and things like that. And as Justice Stewart pointed out, during that time period, we do know that it was while he was a traveling employee in Des Moines, while he was there, we know it had to have been one of those places where he was exposed to this bacteria. Why do we have to know it was one of those places? Because he was nowhere else. He never went anywhere else other than a hotel and a restaurant? That's what he had testified to. He said he went to the hotel, to the restaurant when he went out with friends, and then he would go to work. How about when he went out with friends? Where did he go? He went to local restaurants, and one time I believe he went to the bank. Because he was working from 7 in the morning until 5 at night, and as he said, I was tired at the end of the day. I went back to my hotel room. So there was discussions from one of the supervisors that they may have gone to a strip club or something like that, something that my guy specifically says he didn't do. Well, one of the supervisors said he didn't, and if he went to a strip club, is that part of his employment? Would it include that as a traveling employee? Yes, because there's specifically cases that talk about if a person goes out and is drinking with coworkers, that's covered. And so this would essentially be part of those cases that talk about... Somebody drinking with coworkers is automatically covered? How much further would we carry it from a strip club? I can think of other places you could go to the employer may not like either. But we're not going to get into that now. We're not going to talk about that now, but I mean that would be one step further than the strip club? And that's where the cases, U.S. Industries and Admiral Mechanical Services talked about that very issue. And they said, how far out do we go, and is it a positional risk? Is it a strict liability? And the court said, wait, we're not going to go there. As long as it's reasonable and as long as it's foreseeable, those are the things we're going to take a look at. Is this some personal comfort doctrine you're trying to bring in? I'm trying to put this in perspective of what is the doctrine that you can go anywhere and still have some coverage? Well, we've cited a number of cases that talk about hotel rooms, talk about when they go to a bar and they're out drinking together. It talks about staying at hotels. Well, that's like having dinner or something. It's not just having a drink and you're going to a strip club, is it? Well, there was a case where the two were at a bar drinking. And they said that because he's a traveling employee, it extended out beyond. There was a case where they traveled to Hawaii and were off on a tour of the volcanoes. Yes. And they got injured. It was convincing. Now, they said there are limits. They're not going to go to the person who used the ATV on the mountain, the person who took a trip on a mountain and wasn't familiar with the mountain. They said there are limits to what they're going to allow and certain things that they're going to limit the extent of the coverage for a traveling employee. But they're saying so long as the activities were reasonable and foreseeable, they're saying it is covered. You're right. I mean, your point is legitimate, but how does that apply here? I'm having difficulty including the strip club into what's foreseeable to the employer. I mean, you know, it gets a little bit stretchy. Let me ask a question. Is there conflicting evidence about whether he went to a strip club? Yes. My plan is that he did not. Did the commission or anybody make any findings as to whether he did or not? No. They found him not credible. You're not on that issue. Your argument is that he's accounted for everywhere he was during the period of time that he could have got the infection according to the medical experts. Correct. And that all those places were reasonable and foreseeable. That's what your argument is. Correct. Because as he testified, I was in Des Moines the whole time. I was where my employer told me to be. I was where the employer had sent me to to perform these work activities. Now, some of the other side issues, eating, sleeping, those are parts of the additional requirements of a traveling employee, things that would be reasonable and foreseeable. And so that's where our argument has been. As a result, because the exposure occurred somewhere in Des Moines, we can't pinpoint exactly where, but we know time-wise it had to occur within that time period that it's one of those risks that should be covered as a traveling employee because it's reasonable and foreseeable. Now, also we know that the nature of this bacteria is a rare one. And so it's not one that everyone's going to be associated with. It's not getting a common cold or something like that. There's only 1,000 to 1,500 of these reported per year because of the damaging effect and the detrimental effect. So in essence, the employer, not knowing, not intending to, they sent him to a place where this rare bacteria was, and it's that traveling of going from his home in Belleville down to this place in Des Moines and staying in Des Moines, that's what led to the contracting of this bacteria. It ultimately led to the condition we're talking about. We're talking about MRSA, right? Yes, but this is a special type. This is necrotizing fasciitis. It's an aggressive, fast-moving, it's a flesh-eating virus is what it is. Right, right. The MRSA itself, this common situs of MRSA is the hospital. Right, but this one's unique. This one is not the same as the MRSA that you get in the hospital that you can have and be resistant to. This is one that by the time he got to that third day and he's back at home, when he got to the emergency room, they're amputating his leg, which also gets to the event that occurred at work, which is where he spilled the liquid onto his leg, consistent with the location where they had to amputate the leg. There are tons of credibility problems about all that. So, I mean, he also gave history of getting hit by a flagpole or some kind of a pole. He's just kind of all over the board about different versions of it. And the history that the commission used whenever they used denial is that history from the emergency room where his systolic level was 17. This guy was near death. He doesn't remember even giving it. He said, I remember touching the door for the emergency room. The next thing you know, it's three months later, I'm at St. John's. So he said, I didn't get hit by a flagpole. I don't know where that came from. But that's where the commission had based their denial upon, his history is incorrect. And that's where we're saying it doesn't matter if his history is incorrect. As a traveling employee, we know it occurred within that time period. The contraction of the bacteria had to have occurred while he was in decline. I see my time is up. Thank you. Thank you, Counselor. Thank you. May I please record Dave Reynolds for the respondent? I guess I would first address the notice issue. And I think that is dispositive. That issue that the arbitrator found that, the commission found that, the circuit court found that, they found no notice. The commission also specifically found there was prejudice in addition to the no notice. Absolutely. Right. So no opportunity to investigate. And it certainly wasn't a surprise in the commission finding and the circuit court finding. I think, even given the rest of the argument, that issue is dispositive. And that was a factual determination by the commission that there was no notice. And I think that would be dispositive in terms of the case. We don't need to belabor that. Let's get closer to the merits of why the commission's decision should be upheld on a manifest way test. Well, Your Honor, I think it was discussed within the last few minutes, but the testimony is riddled with inconsistencies. And the commission specifically found problems with this person's credibility. The multiple inconsistencies in the records. The story about the spill didn't even show up until June of 2007. So that's almost a year after the accident. Was that when he was conscious? Well, I think that was, well certainly he was conscious a year after the incident. But hearing, he talked about the spill. Holloman said, he never said anything about it. I think the commission made a determination that that was not credible. That history of the spill was not credible. And I think it's a manifest way argument. The commission made these determinations on notice, on the issue of the credibility of the witnesses. On the medical experts, they weighed the testimony and they said he was not credible. Holloman said there was no liquid on these barrels. There was no accident reported to him. Some of the other things that the experts used in terms of, Dr. Van Ryan talked about scraping meat off of his leg. He talked about itching. None of that is in the initial medical records either. The initial medical records from Memorial Hospital in St. John's talked about a metal pole or a flagpole. How did this pole get tied into this? What's the explanation for that? What does the claimant say about that? I think he said it had something to do with his wife. But that was the history that he gave at the time, the history at the hospital. And there was no history of a spill involving the barrel until June of 2007. Even setting that aside, if the commission finds that the claimant is not credible, the employer's witness is credible, what do we do with it? You affirm the commission's award. It's a simple matter of credibility. The commission is charged with weighing the credibility of the witnesses, weighing the credibility of the experts in making a determination. They did that here, and they said he was not credible. I'm not sure if you wanted me to address the old traveling employee. It's your time. Your 15 minutes. Some or all of it or less of it? I would simply point out that we certainly don't think that, number one, he's a traveling employee. That's in the brief. Number two, it applies here. And I think this was mentioned in the argument. Even to see that he was, there still has to be a risk associated with the employment. The employer is not the insurer. It's not a 24-hour, 24-7. So I think his argument fails with regard to that. Again, my last argument, of course, was no notice, but we kind of beat that to death on this. Thank you. Thank you, counsel. Counsel, you may reply. Thank you, Your Honors. The credibility of John becomes less important when we look at this as a traveling employee case. John's history, even if deemed not credible, doesn't remove the fact that it's undisputed that he was working in DuPont for those three days leading up to the onset of symptoms. Assume that's true for a moment. When did he give notice of his injury to the employer required under the Act? As soon as he became knowledgeable of the fact and coherent enough that he talked with an attorney who said, I think this might be work for labor. He came up with the story that he was injured because he spilled liquid on himself while working on a specific day. And the commission said, you're not credible. That didn't happen. It didn't happen because your supervisor said it didn't happen. You went out for pizza and beer with people that night. You never said a word about it. You go into the hospital and you're diagnosed with having been hit by a flagpole. But his story was, I got this when I spilled it on myself at work. So when did he give notice? He gave notice, would have been 2007, whenever he first became cognizant that it could have been related to his work activities. In this situation, the commission said he didn't give notice within 45 days at the time he was in a coma. Counsel, I don't want to be trite, but this sounds like the guy that defends and says, I didn't shoot him, but if I did, it was self-defense. I mean, come on. His story is, I got spilled at work, but he didn't believe them. But if that story is not true, does it necessarily mean that as a traveling employee, his exposure did not occur at the coin? That becomes our position, and has been our position, that we know the exposure occurred somewhere. If you don't believe it happened at work, we still have the position of, as a traveling employee, it's a risk associated with his work activities. But do we have to fill in the gaps in the evidence? Do we have to then say, well, it must have happened somewhere? Is that our role? You don't have to, because all the experts agree. Even the respondent's own experts said it happened at the coin. All of our experts said the same thing. It happened at the coin. We know it was within that two- to three-day time period somewhere. He can't say restaurant. He can't say hotel. But they all say it occurred while he was there. That's the one thing. Now, after the spill, he went out for beer and pizza with his co-workers, right? According to his supervisor. He said he didn't. He said he went back to the hotel and laid down because his leg was not feeling good. When did he leave the coin? What was the date he left the coin? That would have been the 29th of June 2006. Of June 2006. Correct. And when do you say he told the employer? That would have been 2007. 2007. When in 2007? I don't have the exact date. What do you suggest the manifestation date is? In this situation, the manifestation date, I guess you could argue that the manifestation date would have been whenever a doctor first told him that that condition was causally related to his work as a traveling employee. Did any doctor ever say that to him? He said he could have gotten it anywhere in Duquesne. He could have gotten it from spill at work, right? He could have gotten it from anywhere in Duquesne. But they didn't buy it. So what they're asking us to do is to ignore the fact that they never believed him as to the manner in which he did it or that he ever told anybody about it and create an entirely new scenario for him out of surrounding facts. But that's just it. When this case was pre-tried, post-tried, our whole theory has been all along traveling employee. If you take a look at my, and that's why I attached my brief, the proposed awards, the commission brief, the appellate brief, or the brief to the circuit court, we've been saying traveling employee all along. We haven't been focusing on the specific date. The arbitrator did. We were saying it's easier. It's traveling employee. It occurred within these three days. If you even take a look at my cross-examination of their doctor, that was my questions to him. All right, you don't believe it happened because of a specific event. Did it happen while he was, as a traveling employee, working in Duquesne, exposed to all of the things that a traveling employee would be exposed to? So I think that what I'm asking you to do is reverse it to the commission, and let's see, under the traveling employee standard, does it pass muster? You don't believe him? Well, in this situation, if the commission doesn't believe a man who's had his body ravaged by this bacteria and he's not credible, I mean, I'm not trying to make excuses for him, but if you would have seen him at court, he could barely keep his head up because of how weak he was. But this is something that, unfortunately, he did not have a good history. He thought he got hit from a flagpole, as he told the emergency room doctor. He thought it was a spill. If you don't believe him, okay, that's half the battle. The other battle is if it happened at work while he's in Duquesne as a traveling employee, can we look at that? That's been the theory all along. That's been where I've been focused. So I'm asking that it be kicked back to the commission so they can at least just consider that traveling employee question because that's not up to the claimant or up to the petitioner. That's not up to John's testimony. That's a medical question. Thank you. Thank you, Counsel Bolts. This matter will be taken under advisement. Our written disposition shall issue.